1  E. MARTIN ESTRADA
   United States Attorney
2  MACK E. JENKINS
   Assistant United States Attorney
3  Chief, Criminal Division
   JEFF MITCHELL (Cal. Bar No. 236225)
4  Assistant United States Attorney
   Major Frauds Section
5  DAN G. BOYLE (Cal. Bar No. 332518)
   Assistant United States Attorney
6  Environmental Crimes and
   Consumer Protection Section
7  RACHEL N. AGRESS (Cal. Bar No. 281703)
   Special Assistant United States Attorney
8        1100/1300 United States Courthouse
         312 North Spring Street
9        Los Angeles, California 90012
         Telephone: (213) 894-0698/2426
10       Facsimile: (213) 894-6269
         E-mail:   jeff.mitchell@usdoj.gov
11                 daniel.boyle2@usdoj.gov
                   rachel.agress@usdoj.gov
12
   Attorneys for Plaintiff
13 UNITED STATES OF AMERICA

14                 UNITED STATES DISTRICT COURT

15             FOR THE CENTRAL DISTRICT OF CALIFORNIA

16 UNITED STATES OF AMERICA,          No. CR  8:24-cr-00054-JWH

17         Plaintiff,                 PLEA AGREEMENT FOR DEFENDANT
                                      IPPEI MIZUHARA
18            v.

19 IPPEI MIZUHARA,

20         Defendant.

21

22      1.   This constitutes the plea agreement between IPPEI MIZUHARA

23 ("defendant") and the United States Attorney's Office for the Central

24 District of California (the "USAO") in the investigation of bank

25 fraud and tax fraud associated with the theft of funds from a

26 federally insured financial institution.  This agreement is limited

27 to the USAO and cannot bind any other federal, state, local, or

28

FILED
CLERK, U.S. DISTRICT COURT
5/8/2024
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ CDO _____ DEPUTY

foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2.   Defendant agrees to:

a.   Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a two-count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with Bank Fraud in violation of 18 U.S.C. § 1344(2) and Subscribing to a False Tax Return in violation of 26 U.S.C. § 7206(1).

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h.   Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately.   The

2

1  government is not precluded from pursuing, in excess of any payment

2  schedule set by the Court, any and all available remedies by which to

3  satisfy defendant's payment of the full financial obligation,

4  including referral to the Treasury Offset Program.

5       i.   Complete the Financial Disclosure Statement on a form

6  provided by the USAO and, within 30 days of defendant's entry of a

7  guilty plea, deliver the signed and dated statement, along with all

8  of the documents requested therein, to the USAO by either email at

9  usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial

10  Litigation Section at 300 North Los Angeles Street, Suite 7516, Los

11  Angeles, CA 90012.  Defendant agrees that defendant's ability to pay

12  criminal debt shall be assessed based on the completed Financial

13  Disclosure Statement and all required supporting documents, as well

14  as other relevant information relating to ability to pay.

15       j.   Authorize the USAO to obtain a credit report upon

16  returning a signed copy of this plea agreement.

17       k.   Consent to the USAO inspecting and copying all of

18  defendant's financial documents and financial information held by the

19  United States Probation and Pretrial Services Office.

20     3.   Defendant further agrees:

21       a.   To forfeit all right, title, and interest in and to

22  any and all monies, properties, and/or assets of any kind, derived

23  from or acquired as a result of the illegal activity charged in Count

24  One of the information to which defendant is pleading guilty,

25  specifically including, but not limited to, various collectible

26  baseball cards and sports memorabilia, including associated

27  protective containers, seized on or about March 25, 2024, and April

28  5, 2024 (collectively, the "Forfeitable Assets").

b.   To the Court's entry of an order of forfeiture at or before sentencing with respect to the Forfeitable Assets and to the forfeiture of the assets.

c.   To take whatever steps are necessary to pass to the United States clear title to the Forfeitable Assets, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

d.   Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against the Forfeitable Assets.  If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Assets on behalf of himself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right he may have to seek remission or mitigation of the forfeiture of the Forfeitable Assets.

e.   Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Assets.

f.   Not to claim that reasonable cause to seize the Forfeitable Assets was lacking.

g.   To prevent the transfer, sale, destruction, or loss of any and all assets described above to the extent defendant has the ability to do so.

h.   That forfeiture of Forfeitable Assets shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

i.   With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives: (1) the requirements

4

of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcements of the forfeiture sentencing, and incorporation of the forfeiture in the judgment; (2) all constitutional and statutory challenges to the forfeiture (including by direct appeal, habeas corpus or any other means); and (3) all constitutional, legal, and equitable defenses to the forfeiture of the Forfeitable Assets in any proceeding on any grounds including, without limitation, that the forfeiture constitutes an excessive fine or punishment.  Defendant acknowledges that forfeiture of the Forfeitable Assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty pleas.

4.    Defendant admits that defendant received $4,100,000 of unreported income and claimed $5,000 of illegal deductions for tax year 2022.  Defendant agrees that:

a.    Defendant will file, prior to the time of sentencing, an amended return for the year subject to the above admissions, correctly reporting unreported income and correcting improper deductions and credits; will, if requested to do so by the Internal Revenue Service, provide the Internal Revenue Service with information regarding the year covered by the return; will pay to the Fiscal Clerk of the Court at or before sentencing all additional taxes and all penalties and interest assessed by the Internal Revenue Service on the basis of the return; and will promptly pay to the Fiscal Clerk of the Court all additional taxes and all penalties and interest thereafter determined by the Internal Revenue Service to be

owing as a result of any computational error(s).  Payments may be made to the Clerk, United States District Court, Fiscal Department, 255 East Temple Street, Room 1178, Los Angeles, California 90012.

b.   Nothing in this agreement forecloses or limits the ability of the Internal Revenue Service to examine and make adjustments to defendant's returns after they are filed.

c.   Defendant will not, after filing the return, file any claim for refund of taxes, penalties, or interest for amounts attributable to the return filed in connection with this plea agreement.

d.   Defendant is liable for the fraud penalty imposed by the Internal Revenue Code, 26 U.S.C. § 6663, on the understatement of tax liability for 2022.

e.   Defendant gives up any and all objections that could be asserted to the Examination Division of the Internal Revenue Service receiving materials or information obtained during the criminal investigation of this matter, including materials and information obtained through grand jury subpoenas.

THE USAO'S OBLIGATIONS

5.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to

1  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

2  additional one-level reduction if available under that section.

NATURE OF THE OFFENSES

4      6.   Defendant understands that for defendant to be guilty of

5  the crime charged in Count One, that is, Bank Fraud, in violation of

6  Title 18, United States Code, Section 1344(2), the following must be

7  true:

8          a.   the defendant knowingly carried out a scheme or plan

9  to obtain money or property from Bank A by making false statements or

10 promises;

11         b.   the defendant knew that the statements or promises

12 were false;

13         c.   the statements or promises were material; that is,

14 they had a natural tendency to influence, or were capable of

15 influencing, a financial institution to part with money or property;

16         d.   the defendant acted with the intent to defraud; and

17         e.   Bank A was federally insured.

18     7.   Defendant understands that for defendant to be guilty of

19 the crime charged in Count Two, that is, Subscribing to a False Tax

20 Return, in violation of Title 26, United States Code, Section

21 7206(1), the following must be true:

22         a.   defendant signed and caused the filing of a tax return

23 for the year 2022 that he knew contained false information as to a

24 material matter;

25         b.   the return contained a written declaration that it was

26 being signed subject to the penalties of perjury; and

27         c.   in filing the false tax return, defendant acted

28 willfully.  In order to prove defendant acted "willfully," the

7

government must prove beyond a reasonable doubt that the defendant knew federal tax law imposed a duty on him and the defendant intentionally and voluntarily violated that duty.  A matter is "material" if it has a natural tendency to influence, or is capable of influencing, the decisions or activities of the Internal Revenue Service.

## PENALTIES AND RESTITUTION

8.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1344(2), is: 30 years' imprisonment; a five-year period of supervised release; a fine of $1,000,000; and a mandatory special assessment of $100.

9.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 26, United States Code, Section 7206(1), is: three years' imprisonment; a one-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

10.   Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 33 years' imprisonment; a five-year period of supervised release; a fine of $1,250,000; and a mandatory special assessment of $200.

11.   Defendant understands and agrees that the Court: (a) may order defendant to pay restitution in the form of any additional taxes, interest, and penalties that defendant owes to the United States based upon the count of conviction and any relevant conduct; and (b) must order defendant to pay the costs of prosecution for

8

Count Two, which may be in addition to the statutory maximum fine stated above.

12.  Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offenses to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty; and (b) any charges not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those charges.  The parties currently believe that the applicable amount of restitution is approximately $16,975,010 to Victim A, and $1,149,400 to the Internal Revenue Service (before interest and penalties), but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

13.  Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could

result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

14.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

15.   Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case make it a practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his convictions on his immigration

10

1   status.  Defendant nevertheless affirms that he wants to plead guilty

2   regardless of any immigration consequences that his pleas may entail,

3   even if the consequence is automatic removal from the United States.

4   <u>FACTUAL BASIS</u>

5      16.  Defendant admits that defendant is, in fact, guilty of the

6   offenses to which defendant is agreeing to plead guilty.  Defendant

7   and the USAO agree to the statement of facts provided below and agree

8   that this statement of facts is sufficient to support pleas of guilty

9   to the charges described in this agreement and to establish the

10   Sentencing Guidelines factors set forth in paragraph 18 below but is

11   not meant to be a complete recitation of all facts relevant to the

12   underlying criminal conduct or all facts known to either party that

13   relate to that conduct.

14      Victim A was a professional baseball player from Japan who

15   signed a contract to play baseball for a Major League Baseball team

16   (the "Team") located in the Central District of California beginning

17   in 2018.  At approximately that same time, defendant was hired by the

18   Team to be a Japanese-language interpreter for Victim A.  Defendant

19   also drove Victim A to meetings and interpreted for Victim A outside

20   of baseball activities.  Defendant acted as a de facto manager and

21   gatekeeper to Victim A.  In that role, defendant would regularly

22   interact with Victim A's sports agents and financial advisors on

23   behalf of Victim A because Victim A did not speak English and Victim

24   A's agents and financial advisors did not speak Japanese.  Victim A

25   paid defendant separately for the additional work.

26      On March 8, 2018, defendant accompanied Victim A to a bank in

27   Phoenix, Arizona ("Bank A"), to assist Victim A in opening a bank

28   account to deposit his payroll salary.  Bank A was a domestic

11

financial institution insured by the Federal Deposit Insurance
Corporation.  Inside Bank A, defendant interpreted for Victim A and
assisted him in opening a bank account (the "x5848 Account").
Defendant also interpreted for Victim A when the bank employee
provided Victim A the login information for the x5848 Account on Bank
A's website.

Beginning in or about September 2021, defendant began placing
sports bets with an illegal bookmaker.  Shortly thereafter, defendant
began to lose bets and quickly became indebted to the bookmaker.
Unable to pay his gambling debts, defendant orchestrated a scheme to
deceive and cheat Bank A in order to obtain money from the x5848
Account.

Beginning no later than November 2021 and continuing through
March 2024, defendant engaged in a scheme or plan designed to
fraudulently obtain money from the x5848 Account.  Defendant recalled
the password for the x5848 Account from when he assisted Victim A
with opening the account in 2018, and defendant was able to
successfully sign into the x5848 Account on Bank A's website.  After
obtaining access to the x5848 Account, defendant changed the security
protocols on the account without the permission or authorization of
Victim A.  Specifically, defendant changed the registered email
address and phone number on the account so Bank A employees would
call defendant, and not Victim A, when attempting to verify wire
transfers from the x5848 Account.

In furtherance of the scheme, defendant impersonated Victim A
and used Victim A's personal identifying information to trick and
deceive Bank A employees into authorizing wire transfers from x5848
account.  For example, on or about February 2, 2022, Bank A denied an

attempted wire transfer.  Defendant then called Bank A to complete the wire transfer.  During the call, defendant falsely identified himself as Victim A and falsely stated that he was attempting to wire funds to an associate of the bookmaker for a car loan.  The bank employee attempted to verify the caller by sending a six-digit code via text message to the registered phone number on the x5848 Account. Because defendant had already changed the registered phone number on the account, the bank's text message was sent to defendant. Defendant then read the six-digit code back to the Bank A employee and completed the wire transfer.  In total, defendant called Bank A and impersonated Victim A on approximately 24 occasions.

Between November 2021 and March 2024, defendant regularly logged into the x5848 Account through Bank A's website and initiated wire transfers from the x5848 account to the bookmaker and his associates as payments for gambling debts.  For example, on June 20, 2023, defendant accessed the x5848 Account from the Central District of California pretending to be Victim A and wire transferred $500,000 to an associate of the bookmaker.  At a minimum, defendant caused Bank A to transfer the following funds to bank accounts of associates of the bookmaker:

| Date or Date Range | Amounts | Transferee Account |
|---|---|---|
| 11/15/2021 | 1 wire for $40,010 | Xoom.com |
| 2/4/2022 | 1 wire for $300,000 | X4010 |
| 2/28/2022 to 10/13/2023 | 36 wires totaling $15,000,000 | X1911 |
| 12/15/2023 to 1/8/2024 | 3 wires totaling $1,250,000 | X1530 |

1   Defendant did not notify, or seek permission from, Victim A before

2   transferring money from the x5848 Account.

3       In addition, in September 2023, defendant needed $60,000 worth

4   of dental work.  Victim A agreed to pay for defendant's dental work

5   and authorized a check to defendant for $60,000 drawn on a business

6   account at Bank B; however, without permission or authorization,

7   defendant provided his dentist with Victim A's debt card number for

8   the x5848 Account and charged $60,000 to the x5848 Account.  After

9   defendant paid his dentist with Victim A's debt card, defendant then

10  deposited the $60,000 check from Victim A into defendant's personal

11  checking account for defendant's personal use.

12      Between January and March 2024, defendant also purchased

13  approximately $325,000 worth of baseball cards at online resellers

14  eBay and Whatnot, with payments drawn on the x5848 Account, including

15  baseball cards featuring Yogi Berra, Juan Soto, and Victim A.

16  Defendant purchased the above-described collectible baseball cards

17  from eBay and Whatnot with the intent to resell them at a later date

18  and use the proceeds for his own personal benefit.

19      When Victim A's sports agent and financial advisors asked

20  defendant for access to the x5848 Account, defendant falsely told

21  them that Victim A did not want them to access to the account because

22  it was private.  In truth and in fact as defendant then knew,

23  defendant did not want Victim A's sports agent and financial advisors

24  to review the x5848 Account because he feared they would notice that

25  defendant stole millions of dollars from Victim A.  Based on

26  defendant's false statements of material fact, defendant fraudulently

27  obtained more than $16,975,010 from the x5848 Account.

28

14

Defendant also admits that defendant knowingly and willfully falsely reported his total taxable income to the Internal Revenue Service ("IRS") on his tax return for tax year 2022.  Specifically, on or about February 1, 2024, in Los Angeles County, defendant willfully made and subscribed to a materially false United States Individual Income Tax Return, Form 1040, for tax year 2022, which was filed with the IRS and verified by a written declaration that it was made under the penalties of perjury, which return defendant did not believe to be true and correct as to every material matter, in that defendant reported on line 15 that his total taxable income for calendar year 2022 was $136,865, when, in truth and in fact, as defendant then knew, his total taxable income for the year 2022 was substantially higher than he reported.  For instance, defendant filed as "single," and claimed a $10,000 deduction in Schedule A, line 5e, when, in truth and in fact, as defendant then knew, he was married and only entitled to a $5,000 deduction.  Defendant also admits that he failed to report additional income of $4,100,000 for the year 2022.  Defendant admits that the source of the unreported income was from the bank fraud scheme on the x5848 Account described above.

The false information provided by defendant was material in that it affected the IRS's calculation of the amount of income that defendant had received in 2022, and prevented the IRS from verifying the accuracy of the amount of tax claimed to be owed on the return and determining whether additional income tax was owed.  As a result of the false information defendant provided, defendant owes additional taxes of approximately $1,149,400 for tax year 2022 (before interest and penalties).

1                           SENTENCING FACTORS

2          17.  Defendant understands that in determining defendant's

3    sentence the Court is required to calculate the applicable Sentencing

4    Guidelines range and to consider that range, possible departures

5    under the Sentencing Guidelines, and the other sentencing factors set

6    forth in 18 U.S.C. § 3553(a).  Defendant understands that the

7    Sentencing Guidelines are advisory only, that defendant cannot have

8    any expectation of receiving a sentence within the calculated

9    Sentencing Guidelines range, and that after considering the

10   Sentencing Guidelines and the other § 3553(a) factors, the Court will

11   be free to exercise its discretion to impose any sentence it finds

12   appropriate up to the maximum set by statute for the crimes of

13   conviction.

14         18.  Defendant and the USAO agree to the following applicable

15   Sentencing Guidelines factors:

16   Count One:

17      Base Offense Level:              7            USSG § 2B1.1(a)(1)

18      Between $9.5M-$25M Loss        +20            USSG § 2B1.1(b)(1)(K)

19      More than $1M in gross         +2            USSG § 2B1.1(b)(17)(A)
20      receipts from financial
        institution

21

22   Count Two:

23      Base Offense Level:             20            USSG §§ 2T1.1, 2T4.1(H)

24      Source of income from          +2            USSG §§ 2T1.1(b)(1)
        criminal activity

25

26   Defendant and the USAO reserve the right to argue that additional

27   specific offense characteristics, adjustments, and departures under

28   the Sentencing Guidelines are appropriate.

                                    16

19.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

20.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

21.   Defendant understands that by pleading guilty, defendant gives up the following rights:

      a.   The right to persist in a plea of not guilty.

      b.   The right to a speedy and public trial by jury.

      c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

      d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

      e.   The right to confront and cross-examine witnesses against defendant.

      f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

      g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

1    h.   Any and all rights to pursue any affirmative defenses,

2  Fourth Amendment or Fifth Amendment claims, and other pretrial

3  motions that have been filed or could be filed.

4                WAIVER OF APPEAL OF CONVICTION

5    22.   Defendant understands that, with the exception of an appeal

6  based on a claim that defendant's guilty pleas were involuntary, by

7  pleading guilty defendant is waiving and giving up any right to

8  appeal defendant's convictions on the offenses to which defendant is

9  pleading guilty.  Defendant understands that this waiver includes,

10 but is not limited to, arguments that the statutes to which defendant

11 is pleading guilty are unconstitutional, and any and all claims that

12 the statement of facts provided herein is insufficient to support

13 defendant's pleas of guilty.

14          LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

15   23.   Defendant agrees that, provided the Court imposes a term of

16 imprisonment within or below the range corresponding to an offense

17 level of 25 and the criminal history category calculated by the

18 Court, defendant gives up the right to appeal all of the following:

19 (a) the procedures and calculations used to determine and impose any

20 portion of the sentence, with the exception of the Court's

21 calculation of defendant's criminal history category; (b) the term of

22 imprisonment imposed by the Court, except to the extent it depends on

23 the Court's calculation of defendant's criminal history category;

24 (c) the fine imposed by the Court, provided it is within the

25 statutory maximum; (d) to the extent permitted by law, the

26 constitutionality or legality of defendant's sentence, provided it is

27 within the statutory maximum; (e) the amount and terms of any

28 restitution order, provided it requires payment of no more than

                            18

$16,975,010 to Victim A, and $1,149,400 to the Internal Revenue Service (before interest and penalties); (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

24.  Defendant also gives up any right to bring a post-conviction collateral attack on the convictions or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

25.  The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 25 and the criminal history category calculated by the Court, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the following: the amount of

19

restitution ordered if that amount is less than $16,975,010 to Victim A, and $1,149,400 to the Internal Revenue Service (before interest and penalties).

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

26.  Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then the USAO will be relieved of all of its obligations under this agreement.

<u>EFFECTIVE DATE OF AGREEMENT</u>

27.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

<u>BREACH OF AGREEMENT</u>

28.  Defendant agrees that if defendant, at any time after the effective date of this agreement, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES
OFFICE NOT PARTIES

29.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

30.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 18 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

31.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to

fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

32.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//

//

//

1 <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

2   33. The parties agree that this agreement will be considered

3 part of the record of defendant's guilty plea hearing as if the

4 entire agreement had been read into the record of the proceeding.

5 AGREED AND ACCEPTED

6 UNITED STATES ATTORNEY'S OFFICE
 FOR THE CENTRAL DISTRICT OF
7 CALIFORNIA

8 E. MARTIN ESTRADA
 United States Attorney

9

10  */s/ Jeff Mitchell*     5/8/2024

  JEFF MITCHELL        Date
11 DAN G. BOYLE
  RACHEL N. AGRESS
12 Assistant United States Attorneys

13           5/5/24

  IPPEI MIZUHARA      Date
14 Defendant

15  *Michael G. Freedman*    May 5, 2024

  MICHAEL G. FREEDMAN    Date
16 Attorney for Defendant
  Ippei Mizuhara
17

18

19       <u>CERTIFICATION OF DEFENDANT</u>

20   I have read this agreement in its entirety.  I have had enough

21 time to review and consider this agreement, and I have carefully and

22 thoroughly discussed every part of it with my attorney.  I understand

23 the terms of this agreement, and I voluntarily agree to those terms.

24 I have discussed the evidence with my attorney, and my attorney has

25 advised me of my rights, of possible pretrial motions that might be

26 filed, of possible defenses that might be asserted either prior to or

27 at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

28 of relevant Sentencing Guidelines provisions, and of the consequences

1  of entering into this agreement.  No promises, inducements, or
2  representations of any kind have been made to me other than those
3  contained in this agreement.  No one has threatened or forced me in
4  any way to enter into this agreement.  I am satisfied with the
5  representation of my attorney in this matter, and I am pleading
6  guilty because I am guilty of the charges and wish to take advantage
7  of the promises set forth in this agreement, and not for any other
8  reason.

9  _____        _____
10 IPPEI MIZUHARA                          Date
   Defendant
11

12

13

14              CERTIFICATION OF DEFENDANT'S ATTORNEY
15 I am Ippei Mizuhara's attorney.  I have carefully and thoroughly
16 discussed every part of this agreement with my client.  Further, I
17 have fully advised my client of his rights, of possible pretrial
18 motions that might be filed, of possible defenses that might be
19 asserted either prior to or at trial, of the sentencing factors set
20 forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
21 provisions, and of the consequences of entering into this agreement.
22 To my knowledge: no promises, inducements, or representations of any
23 kind have been made to my client other than those contained in this
24 agreement; no one has threatened or forced my client in any way to
25 enter into this agreement; my client's decision to enter into this
26 //
27 //
28

                             24

1  agreement is an informed and voluntary one; and the factual basis set

2  forth in this agreement is sufficient to support my client's entry of

3  guilty pleas pursuant to this agreement.

4  *Michael G. Freedman*                          May 5, 2024

5  MICHAEL G. FREEDMAN                            Date
   Attorney for Defendant
6  Ippei Mizuhara

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT

1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                  FOR THE CENTRAL DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,          CR No.

11              Plaintiff,              I N F O R M A T I O N

12        v.                            [18 U.S.C. § 1344(2): Bank Fraud;
                                        26 U.S.C. § 7206(1): Subscribing
13   IPPEI MIZUHARA,                    to False Tax Return; 18 U.S.C.
                                        § 981(a)(1)(C) and 28 U.S.C.
14              Defendant.              § 2461(c): Criminal Forfeiture]

15

16        The United States Attorney charges:

17                             COUNT ONE

18                      [18 U.S.C. §§ 1344(2), 2]

19   A.   INTRODUCTORY ALLEGATIONS

20        At times relevant to this Information:

21        1.   Victim A was a professional baseball player from Japan who

22   signed a contract to play baseball for a Major League Baseball team

23   (the "Team") located in the Central District of California beginning

24   in 2018.

25        2.   Defendant IPPEI MIZUHARA was hired by the Team to be a

26   Japanese-language interpreter for Victim A.  Defendant MIZUHARA also

27   drove Victim A to meetings and interpreted for Victim A outside of

28

baseball activities.  Defendant MIZUHARA acted as a de facto manager and gatekeeper to Victim A.

3.   Defendant MIZUHARA would regularly interact with Victim A's sports agents and financial advisors on behalf of Victim A because Victim A did not speak English and Victim A's agents and financial advisors did not speak Japanese.

4.   Bank A was domestic financial institution insured by the Federal Deposit Insurance Corporation.

5.   On March 8, 2018, defendant MIZUHARA accompanied Victim A to Bank A in Phoenix, Arizona, to assist Victim A in opening a bank account to deposit Victim A's payroll salary.  Inside Bank A, defendant MIZUHARA interpreted for Victim A and assisted him in opening a bank account (the "x5848 Account").  Defendant MIZUHARA also interpreted for Victim A when the bank employee provided Victim A the login information for the x5848 Account on Bank A's website.

6.   Beginning in or about September 2021, defendant MIZUHARA began placing bets with an illegal bookmaker.  Shortly thereafter, defendant MIZUHARA began to lose bets and quickly became indebted to the bookmaker.

B.   THE SCHEME TO DEFRAUD

7.   Beginning no later than in or about November 2021 and continuing through in or about March 2024, in Orange County, within the Central District of California, and elsewhere, defendant MIZUHARA knowingly and with the intent to defraud, devised, participated in, and executed a scheme or plan designed to obtain money and property owned by and in custody and control of Bank A, from the x5848 Account, by means of materially false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

2

8.   The fraudulent scheme operated and was carried out, in substance, in the following manner:

a.   Using the password for the x5848 Account that defendant MIZUHARA recalled from when he assisted Victim A in opening the account in 2018, defendant MIZUHARA successfully signed into the x5848 Account on Bank A's website in November 2021.

b.   After obtaining access to the x5848 Account, defendant MIZUHARA changed the registered email address and phone number on the account so Bank A employees would call defendant MIZUHARA, and not Victim A, when attempting to verify wire transfers from the x5848 Account.

c.   Defendant MIZUHARA then, without the permission or authorization of Victim A, knowingly accessed the x5848 Account and transferred funds from that account to others, known and unknown to the United States Attorney, for the purpose of paying gambling debts incurred by defendant MIZUHARA.

9.   In total, as a result of the aforementioned scheme to defraud, between in or about November 2021 and in or about March 2024, defendant MIZUHARA fraudulently transferred and willfully caused to be transferred approximately $16.5 million from the x5848 Account to pay defendant MIZUHARA's gambling debts.

C.   UNDERLYING EXECUTION OF THE FRAUDULENT SCHEME

10.   On or about June 20, 2023, in Orange County, within the Central District of California, and elsewhere, defendant MIZUHARA committed and willfully caused others to commit the following act, which constituted an execution of the fraudulent scheme: defendant accessed the x5848 Account from the Central District of California

3

1  pretending to be Victim A and conducted a wire transfer of $500,000
2  to an account controlled by an associate of the bookmaker.
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COUNT TWO

[26 U.S.C. § 7206(1)]

11.  On or about February 1, 2024, in Los Angeles County, within the Central District of California, and elsewhere, defendant IPPEI MIZUHARA willfully made and subscribed to a materially false United States Individual Income Tax Return, Form 1040, for calendar year 2022, which was filed with the Internal Revenue Service and verified by a written declaration that it was made under the penalties of perjury, and which income tax return defendant MIZUHARA did not believe to be true as to every material matter, in that, on such Form 1040, defendant MIZUHARA reported on line 15 that his taxable income for calendar year 2022 was $136,865, when, as defendant MIZUHARA then knew, his taxable income for that year was substantially higher than he reported.

1                      FORFEITURE ALLEGATION

2          [18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

3       1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal

4  Procedure, notice is hereby given that the United States of America

5  will seek forfeiture as part of any sentence, pursuant to Title 18,

6  United States Code, Section 981(a)(1)(C) and Title 28, United States

7  Code, Section 2461(c), in the event of the defendant's conviction of

8  the offense set forth in Count One of this Information.

9       2.    The defendant, if so convicted, shall forfeit to the United

10 States of America the following:

11          a.    All right, title, and interest in any and all

12 property, real or personal, constituting, or derived from, any

13 proceeds traceable to the offenses, including, but not limited to

14 various collectible baseball cards and sports memorabilia, including

15 associated protective containers, seized on or about March 25, 2024

16 and April 5, 2024; and

17          b.    To the extent such property is not available for

18 forfeiture, a sum of money equal to the total value of the property

19 described in subparagraph (a).

20      3.    Pursuant to Title 21, United States Code, Section 853(p),

21 as incorporated by Title 28, United States Code, Section 2461(c), the

22 defendant, if so convicted, shall forfeit substitute property, up to

23 the value of the property described in the preceding paragraph if, as

24 the result of any act or omission of the defendant, the property

25 described in the preceding paragraph or any portion thereof (a)

26 cannot be located upon the exercise of due diligence; (b) has been

27 transferred, sold to, or deposited with a third party; (c) has been

28 placed beyond the jurisdiction of the court; (d) has been

                                6

1  substantially diminished in value; or (e) has been commingled with

2  other property that cannot be divided without difficulty.

3

4

5

6                                    E. MARTIN ESTRADA
                                     United States Attorney
7

8

9                                    MACK E. JENKINS
                                     Assistant United States Attorney
10                                   Chief, Criminal Division

11                                   KRISTEN A. WILLIAMS
                                     Assistant United States Attorney
12                                   Chief, Major Frauds Section

13                                   SCOTT PAETTY
                                     Assistant United States Attorney
14                                   Deputy Chief, Major Frauds Section

15                                   JEFF MITCHELL
                                     Assistant United States Attorney
16                                   Major Frauds Section

17                                   DAN G. BOYLE
                                     Assistant United States Attorney
18                                   Environmental Crimes and
                                      Consumer Protection Section
19
                                     RACHEL N. AGRESS
20                                   Special Assistant United States
                                     Attorney
21

22

23

24

25

26

27

28