JOSEPH T. MCNALLY
Acting United States Attorney
LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division
JEFF MITCHELL (Cal. Bar No. 236225)
Assistant United States Attorney
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0698
    Facsimile: (213) 894-3713
    E-mail:   jeff.mitchell@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 24-00054-JWH |
|---|---|
| Plaintiff, | **GOVERNMENT'S RESPONSE TO DEFENDANT IPPEI MIZUHARA'S POSITION RE: SENTENCING; EXHIBITS; DECLARATION OF AUSA JEFF MITCHELL** |
| v. | |
| IPPEI MIZUHARA, | SENTENCING DATE: 02/06/2025 |
| Defendant. | |

    Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorney Jeff Mitchell, hereby files its response to defendant IPPEI MIZUHARA's sentencing position.

//

//

//

The government's response is based upon the attached memorandum of points and authorities, the attached exhibits and declaration,[1] the files and records in this case, the Presentence Report, and such further evidence and argument as the Court may permit.

Dated: January 30, 2025                Respectfully submitted,

                                       JOSEPH T. MCNALLY
                                       Acting United States Attorney

                                       LINDSEY GREER DOTSON
                                       Assistant United States Attorney
                                       Chief, Criminal Division


                                            */s/ Jeff Mitchell*
                                       JEFF MITCHELL
                                       Assistant United States Attorney

                                       Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA

---

[1] The government submits Exhibits B through G with this filing. Exhibit A was previously submitted in the Government's initial sentencing position at Dkt. No. 67.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

On January 23, 2025, defendant IPPEI MIZUHARA ("defendant") filed his sentencing position; however, many of the claims in his sentencing position are not supported by the evidence. The government hereby files it response.

**II.  UNSUPPORTED CLAIMS**

First, defendant blames his crime on a "long standing" gambling addiction in which he "frequented casinos four to five times a week." (Def. Sentencing Pos. at 7, 16); however, there is no evidence of a "long standing" addiction other than his self-serving and uncorroborated statements to the psychologist he hired for purposes of sentencing. Indeed, the government's investigation found only minimal evidence of defendant's past legal gambling. Specifically, the government looked at more than 30 casinos across the country for evidence of defendant's gambling, and the only evidence found was defendant spending $200 at The Mirage casino during a weekend in 2008. Defendant also registered for FanDual in 2018 but never placed a bet, and only began betting online with DraftKings in 2023 after defendant had already stolen millions of dollars from Mr. Ohtani. (Govt. Exhibits B, C, D.)

Next, defendant claims that he "quickly fell into tremendous debt" and that he "could not find any way to pay it but to use Shohei's money." (Def. Exhibit 1 at 2.) Defendant's recollection of the events is not consistent with the evidence. Defendant did not initially accumulate such a "tremendous debt" that it forced him to steal millions of dollars from Mr. Ohtani, as he claims. In fact, defendant's first wire transfer to the bookie was for a modest

$40,000 in September 2021.  (Plea Agreement ¶ 16.)  At that time, defendant had more than $34,000 in his checking account and could have used his own money to pay the bookie (Govt. Exhibit E at 1), but instead chose to steal from Mr. Ohtani.

Defendant also claims in his letter to the Court that he always intended to "win and make [Mr. Ohtani] whole." (Def. Sentencing Pos. at 17.)  But as the government described in its initial sentencing position, defendant deposited the money he won from the bookie (Mathew Bowyer) into his personal bank account, and not into Mr. Ohtani's account.  Further, defendant also deposited significant amounts of cash, Venmo transfers, and winnings from DraftKings into his personal account, and kept all of that money for his personal use.  (Govt. Exhibit E at 2, 4-6.)  This evidence shows that defendant had no intention of repaying Mr. Ohtani.

Defendant also claims that he "had to rent a place near [Mr. Ohtani] which meant the rent was not going to be cheap."  (Def. Exhibit 1 at 2.)  Defendant then described paying the "hefty rent price" in Newport Beach, as well having to pay rent for an apartment in Japan.  (Id.)  But this is also not true.  Defendant did not pay his own rent.  In fact, the evidence shows that he was using Mr. Ohtani's debit card to pay his rent at the Villas Fashion Island Apartments in Newport Beach, without Mr. Ohtani's knowledge or authorization.  (Govt. Exhibit F; PSR ¶ 88.)

Defendant then attempts to claim that he was "living paycheck to paycheck."  (Def. Exhibit 1 at 2.)  Again, this is not true. Even if we ignore the $250,000 salary he earned in 2023 while stealing millions of dollars, defendant was still making $85,000 in 2022.  Defendant, however, fails to advise the Court that he had

almost no true expenses.  He had no loans, car payments, or rent expenses.  Not only was defendant using Mr. Ohtani's debit card to pay his rent and make additional purchases for his personal use, but Mr. Ohtani gave him a Porsche to drive.  Further, and contrary to what defendant told the Court, defendant's checking account always had a significant balance.  For example, defendant had a balance of $30,236 in March 2023 and $195,113 in March 2024. (Govt. Exhibit E at 3, 7.)

Defendant also claims that Mr. Ohtani forced him to turn down opportunities to write books and appear in commercials.  (Def. Exhibit 1 at 2.)  This is also not true.  Mr. Ohtani encouraged him to accept the deals, and defendant did in fact write at least one book about Mr. Ohtani.  (Govt. Exhibit G.)  The eBay listing in Exhibit G shows several purchases in the last several months; however, defendant did not report any income from book sales to USPO.

Next, defendant claims that he is "likely to face considerable scrutiny while incarcerated, heightening the danger of time in custody."  (Def. Sentencing Pos. at 21.)  The government recognizes that defendant may receive scrutiny if incarcerated in Los Angeles, but he is likely to receive a different welcome if assigned to a facility in Northern California, or any facility outside of Los Angeles.

Finally, defendant repeatedly claims that he is remorseful and wants to accept full responsibility for his actions, but his letter to the Court suggests otherwise.  All defendants claim to be remorseful at the time of sentencing, but the question courts must answer is whether the defendant is truly remorseful or whether they

3

are just sorry they were caught.  Here, there is no doubt defendant feels ashamed from the international attention he received from his fraud scheme and web of lies, but instead of showing true remorse defendant appears to try to justify stealing millions of dollars from Mr. Ohtani.  In his letter to the Court, defendant states: "I need to tell you what <u>motivated</u> me to act against the law."  (Def. Exhibit 1 at 1) (emphasis added.)  He then proceeds to complain about working with Mr. Ohtani and goes to great lengths to describe the often-mundane nature of it during the off-season: "I drove him everywhere . . . whenever he needed it, so i felt like i was on call 24/7. . . . fixing his bicycle . . . take his dog to the vet . . . almost no true days off."  (<u>Id.</u>)  Defendant then states: "I felt like I was getting severely underpaid but I was afraid to speak up for myself as I was on a one year contract every year and I didn't want to upset them and end up getting fired."  (<u>Id.</u> at 2.)

    The government does not question defendant's work ethic, but only his characterization of the work and his true intention.  Instead of using this opportunity to apologize and show true remorse, he has used it, in a public filing, to complain about his work and Mr. Ohtani.  Prior to this case, public reports described defendant as the most famous interpreter in the country and that he had an Instagram following of more than 300,000 after the World Baseball Classic in 2023.[1]  Indeed, in defendant's own letter to the Court he stated that he had "numerous offers from Japanese companies over the years such as writing books, doing TV/Radio interviews, appearing in TV commercials. . . ."  (<u>Id.</u>)  It appears that

---

[1] https://www.nytimes.com/athletic/5362145/2024/03/22/mlb-language-interpreters-ippei-mizuhura-shohei-ohtani/

4

defendant is more concerned about his public image, rather than making amends.

For all of these reasons, a significant period of incarceration is necessary.

**III. CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court impose a sentence of 57 months' imprisonment, three years of supervised release, restitution of $16,975,010 to Shohei Ohtani and $1,149,400 to the IRS, and a special assessment of $200.

DECLARATION OF JEFF MITCHELL

I, Jeff Mitchell, declare as follows:

1. I am an Assistant United States Attorney in the United States Attorney's Office for the Central District of California. I represent the government in this case.

2. Attached hereto as Exhibit B to the Government's Response to Defendant Ippei Mizuhara's Position Re: Sentencing are records obtained from MGM Resorts International, the parent company of The Mirage casino.

3. Attached hereto as Exhibit C to the Government's Response to Defendant Ippei Mizuhara's Position Re: Sentencing are records obtained from FanDual.

4. Attached hereto as Exhibit D to the Government's Response to Defendant Ippei Mizuhara's Position Re: Sentencing are records obtained from DraftKings.

5. Attached hereto as Exhibits E and F to the Government's Response to Defendant Ippei Mizuhara's Position Re: Sentencing are records obtained from Bank A, as previously described in the Complaint Affidavit.

6. Attached hereto as Exhibit G to the Government's Response to Defendant Ippei Mizuhara's Position Re: Sentencing is a print out of an eBay listing.

7. Exhibits B-G are true and accurate representations of the evidence obtained during the investigation.

//
//
//

1  I declare under penalty of perjury under the laws of the United
2  States of America that the foregoing is true and correct and that
3  this declaration is executed at Los Angeles, California, on January
4  30, 2025.

*[signature]*
JEFF MITCHELL